[No. 13501–5–I. Division One. December 23, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. TERRY
LAMONT JACKSON, *Appellant.*

*John R. Christiansen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Rexanne Gibson, Deputy,* for respondent.

CORBETT, C.J.—Terry Lamont Jackson appeals his conviction and disposition in juvenile court for indecent liberties contrary to RCW 9A.44.100(1)(b). He alleges error in the failure to charge him with the crime of second degree incest instead of indecent liberties, in the court's admission

of the victim's hearsay statements, and in the court's delayed entry of the findings of fact and conclusions of law. We affirm.

Around 11 p.m. on January 28, 1983, the mother of the 9–year–old victim in this case discovered the child in her bed pulling up her pajama bottoms. The mother walked around to the side of the bed and saw the appellant on the floor wearing just his undershorts. When asked what he was doing in the victim's room, he responded that he had blacked out. The mother began hitting the appellant with a cord and told him to leave the house. After the appellant left, the mother asked the victim what had happened and the child repeatedly told her that nothing had happened. The mother proceeded to hit the victim with the cord.

Appellant's mother, the sister of the victim's mother, came over to the victim's home shortly thereafter. She and the victim's mother took the victim to Harborview Medical Center. While the victim's mother was talking to a social worker and before the victim was examined, the appellant's mother asked the victim what happened. The victim either said that nothing happened or that she did not know. However, when the appellant's mother asked the victim:

> "[D]id Terry try to force you, did he say he was going to hurt you, or do anything to you, if you didn't do this or that?" She said, "No." Then I [the appellant's mother] also asked her had it happened before, and then she would say, "Yeah," or something like that.

Appellant's mother testified that her son told her he went into the victim's room and was lying on the bed, but nothing happened.

At the fact–finding, the victim testified that on the night in question, she was asleep in her room when the appellant came in. He pulled his shorts down and pulled her pajama bottoms down to her knees. He then lay on top of her and moved up and down. His penis touched her vagina. This hurt her. A short time later, her mother came into her room, and the appellant got on the floor. The victim felt scared. She testified that at the hospital she told her aunt

what happened in the bedroom and that a couple of days later she told her mother what had occurred. She did not confide in her mother earlier because she was frightened.

Over the objection of defense counsel, the court admitted pursuant to RCW 9A.44.120 a summary of the victim's statements made at a group interview held on February 25, 1983. The summary detailed what the victim told the interviewers about the incident with the appellant. She essentially related the same story as she related in her testimony during the fact–finding except that during the interview she also implicated him in two other similar incidents.

The court found the appellant guilty of indecent liberties and subsequently entered its findings of fact and conclusions of law.[1]

Appellant's first assignment of error is that he should not have been charged with indecent liberties, but should have been charged, if at all, with second degree incest because the victim was his first cousin. At one time in Washington, incest was defined as sexual intercourse between two persons more closely related than second cousins. Rem. & Ball. Code § 2455; *State v. Nakashima,* 62 Wash. 686, 687, 114 P. 894 (1911). The statute was amended and the definition changed. The Legislature is presumed to be familiar with its own prior legislation relating to the subject of legislation. *Neil F. Lampson Equip. Rental & Sales, Inc. v. West Pasco Water Sys., Inc.,* 68 Wn.2d 172, 175, 412 P.2d 106 (1966). Currently, the incest statute provides:

> A person is guilty of incest in the second degree if he engages in sexual contact with a person whom he knows

---

[1] We note that the appellant has not assigned error to the findings of fact. We will therefore consider them as verities on appeal. *State v. Rodriguez,* 32 Wn. App. 758, 760, 650 P.2d 225 (1982). Finding of fact 2 provides that on the night in question, the victim was awakened around 11 p.m. by the appellant, who was wearing only undershorts which were pulled down. He climbed into bed with the victim, removed her pajama bottoms, and lay down on top of her. The victim was lying on her stomach. The appellant moved around on top of the victim and attempted to insert his penis in her vagina, causing her pain. This finding is sufficient to support his conviction.

to be related to him, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood.

RCW 9A.64.020(2). Clearly the statute no longer applies to cousins. Appellant could not have been charged under the incest statute and was properly charged under RCW 9A.44-.100, the indecent liberties statute.[2]

Appellant next assigns error to the court's admission of a summary of the statements made by the victim during the February 25, 1983 interview. The court admitted the statement pursuant to RCW 9A.44.120.[3] A finding that statements are within the statutory child abuse exception should not be reversed absent a showing of manifest abuse of discretion. *State v. Slider,* 38 Wn. App. 689, 698, 688

---

[2]RCW 9A.44.100 provides:

"(1) A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:

"(a) By forcible compulsion; or

"(b) When the other person is less than fourteen years of age; or

"(c) When the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless.

"(2) For purposes of this section, 'sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party.

"(3) Indecent liberties is a class B felony."

[3]Former RCW 9A.44.120 provides:

"A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of the state of Washington if:

"(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

"(2) The child either:

"(a) Testifies at the proceedings; or

"(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

"A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement."

P.2d 538 (1984). The Supreme Court in *State v. Ryan,* 103 Wn.2d 165, 175–76, 691 P.2d 197 (1984) set out nine factors to apply in determining whether an out–of–court statement sought to be admitted under this statute is sufficiently reliable. The first five factors are as follows:

"(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness."

*Ryan,* at 175–76 (quoting *State v. Parris,* 98 Wn.2d 140, 146, 654 P.2d 77 (1982)). The last four factors are taken from *Dutton v. Evans,* 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970), and are as follows:

(1) the statement contains no express assertion about past fact, (2) cross examination could not show the declarant's lack of knowledge, (3) the possibility of the declarant's faulty recollection is remote, and (4) the circumstances surrounding the statement . . . are such that there is no reason to suppose the declarant misrepresented defendant's involvement.

*Ryan,* at 176.

Applying the *Parris* factors to this case, first, the fact that immediately after the incident, the victim told her mother that nothing happened indicates that she was confused and frightened, rather than that she had a motive to lie. Second, there is nothing in the record to indicate that the victim was not a normal child. Third, the victim made the statements during a group interview. Fourth, she did not spontaneously describe the incident, although she did describe what the appellant was wearing at the time and what he did with her clothes. For the most part, she nodded yes or no when asked questions. She also demonstrated what had occurred using anatomically correct dolls. Fifth, the statements were made approximately 1 month after the incident. The witnesses to the victim's statements were a police detective, a deputy prosecutor, and a worker from Children's Protective Services.

Applying the *Dutton* factors, first, the victim's statements were assertions about past facts. Second, cross examination possibly could have shown the victim's lack of knowledge, but the appellant's attorney did not explore the area. Third, there is no indication that the victim's recollection was faulty, except for her initial denials allegedly made out of fear or confusion. Fourth, the circumstances do not indicate any reason for the victim to misrepresent the appellant's involvement. The *Ryan* court did not state what weight should be given to the various factors, but it found that the statements by the victims in the case were not sufficiently reliable because all the factors militated against admission. In this case, while not every factor favored admission, most did. Further, this case is distinguishable from *Ryan* because here the victim, the declarant, was available as a witness and did testify, thus providing an opportunity for cross examination. However, the appellant's attorney chose not to pursue the matter.

█ Even if the court erred in admitting the statement under RCW 9A.44.120 and *Ryan,* any such error was harmless. The admission of hearsay may violate the right of confrontation under the Sixth Amendment and Const. art. 1, § 22 (amend. 10). *See Ryan,* at 169. Under constitutional harmless error analysis, the error must be harmless beyond a reasonable doubt. *State v. Jones,* 101 Wn.2d 113, 125, 677 P.2d 131 (1984). The test to determine whether constitutional error is harmless was recently articulated in *State v. Guloy,* 104 Wn.2d 412, 705 P.2d 1182 (1985), where the court adopted the "overwhelming untainted evidence" test. Under this test, the appellate court looks only at the untainted evidence to determine whether it is so overwhelming that it necessarily leads to a finding of guilt. *Guloy,* at 426.

The untainted evidence in this case included (1) the victim's in–court testimony, (2) the testimony of the appellant's mother regarding her son's statement that he was in the victim's bed, as well as her testimony regarding the victim's statement at the hospital that a similar incident had

occurred before, and (3) the circumstantial evidence before the court of the appellant dressed only in his undershorts in the victim's room. This evidence is sufficient to support the trial court's findings of fact, and the error, if any, in admitting the summary of the victim's statements was harmless beyond a reasonable doubt.

Appellant also assigns error to the entry of the findings of fact at the time of disposition, which was more than 30 days after the State received the notice of appeal. The 30–day time limit was suggested by *State v. Commodore,* 38 Wn. App. 244, 250, 684 P.2d 1364 (1984). There is no indication that the appellant was in any way prejudiced by the entry of the findings at the time of disposition. Without prejudice, there is no reversible error. *State v. Caliguri,* 99 Wn.2d 501, 508, 664 P.2d 466 (1983).

Affirmed.

RINGOLD and SCHOLFIELD, JJ., concur.