John J. Walsh, J.
During the course of this trial, a serious question of law has arisen which required a recess of this jury trial to permit its resolution before proceeding to hear any further testimony.
The prosecution has presented some 30 witnesses to establish its contention that the two defendants on trial and two codefendants who have been granted severances for separate reasons, committed an armed robbery in the City of Rome, New York on April 19,1968.
The testimony now sought to be introduced is that of State Trooper Suffolk. Through him, the prosecution seeks to establish the background, training and pedigree of two bloodhounds, ‘ ‘ Colonel of Red Stone ’ ’ and ‘ ‘ Corporal of Red Stone ”. After a few preliminary questions as to the training and experience of the bloodhounds, defense counsel interposed an objection to such testimony upon the ground that it is completely inadmissible in evidence in a criminal action.
*724 The weight of authority in this country, however, holds that evidence of trailing by bloodhounds is admissible in a criminal action provided a proper foundation is first laid. (See “ Evidence of Trailing By Dogs In Criminal Cases ” Ann. 18 ALR 3d 1221 et seq.)
The following jurisdictions favor the view that such evidence is admissible in evidence:
Alabama: Burks v. State (240 Ala. 587); Arkansas: Rolen v. State (191 Ark. 1120); Florida: Tomlinson v. State (129 Fla. 658); Georgia: Mitchell v. State (202 Ga. 247); Kansas: State v. Netherton (133 Kan. 685); Kentucky: Daugherty v. Commonwealth (293 Ky. 147); Louisiana: State v. Green (210 La. 157); Maryland: Terrell v. State (3 Md. App. 340); Massachusetts: Commonwealth v. Le Page (352 Mass. 403); Mississippi: Hinton v. State (175 Miss. 308); Missouri: State v. Fields (434 S. W. 2d 507); North Carolina: State v. Rowland (263 N. C. 353); Ohio: State v. Dickerson (77 Ohio St. 34); Oklahoma: Buck v. State (77 Okla. Crim. 17); Pennsylvania: Commonwealth v. Hoffman (52 Pa. Super. Ct. 272); South Carolina: State v. Brown (103 S. C. 437); Tennesee: Copley v. State (153 Tenn. 189); Texas: Parker v. State (46 Tex. Crim. 461); West Virginia: State v. McKinney (88 W. Va. 400).
Those jurisdictions which hold such evidence inadmissible include: Illinois: People v. Pfanschmidt (262 Ill. 411) (bloodhounds held to be unreliable); Indiana: Ruse v. State (186 Ind. 237) (such evidence too uncertain); Iowa: State v. Grba (196 Iowa 241) (such evidence weak and uncertain); Montana: State v. Storm (125 Mont. 346) (such evidence incompetent); Nebraska: Brott v. State (70 Neb. 395) (such evidence unsafe).
Minnesota declined to pass upon the question of admissibility saying that in that case, Crosby v. Moriarty (148 Minn. 201) no proper foundation had been laid for the evidence.
This brings us to the interesting ease of People v. Whitlock (183 App. Div. 482). In that case, the appellate court assumed, without deciding the question, that, under proper conditions, evidence of trailing by a dog would be admissible in evidence, stating that the weight of authority appeared to be in that direction. The conviction was reversed, however, upon the ground that no proper foundation had been laid for the introduction of such evidence.
Although this court is of the opinion that in the absence of appellate ruling to the contrary it should accept the dictum of People v. Whitlock (supra) it might be well to examine the arguments made against the admission of such evidence,
*725 1. That the actions of the bloodhounds are unreliable.
2. That such evidence constitutes hearsay.
3. That the defendant is deprived of his constitutional right to be confronted by the witnesses against him.
4. That the defendant should not be placed in jeopardy by the actions of an animal.
5. That a defendant cannot cross-examine the dogs.
6. That a jury might be awed by such testimony and give it much greater weight and importance than it warranted.
The theory upon which bloodhound evidence is offered is that the body of every human being constantly emanates microscopic particles of effluvia which possesses an odor characteristic of the particular individual, and the highly developed olfactory nerves of the bloodhound enable him to detect the peculiar odor of these particles, and thus to follow the trail by such scent. The term “ bloodhound ” has nothing to do with the traits, characteristics or disposition of the dog. It merely signifies that it is a blooded or thoroughbred hound. (See “ The Bloodhound As a Witness ” J. C. McWhorter, 54 Amer. L. Rev. 109 [1920].) The dog’s reliability must be established by means of testimony as to his pedigree, his training, his previous success or failure in following the trails of individuals, and all other circumstances from which a jury may make a finding of reliability before acting on such evidence.
Such evidence falls into the category of opinion evidence rather than hearsay. The animals are not witnesses against a defendant any more than a microscope or a spectograph.
These are not subject to cross-examination any more than the animal. It is the handler who is the witness and he is merely asked to testify to what the animal actually did, not his opinion as to the guilt or innocence of a person.
A person is no more placed in jeopardy by the action of an animal than he is by a breath analyzer or a blood test.
As to the undue importance to be placed by a jury upon such evidence, the court has a duty to charge the jury to the effect that such evidence must be viewed with the utmost caution; that it is of slight probative value; that it must be considered, if found reliable, not separately but in conjunction with all the other testimony in the case; and in the absence of some other direct evidence of guilt would not warrant a conviction. Under adequate safeguards, a jury should be trusted to handle this problem sensibly.
No convincing reason appears to warrant this court in rejecting the generally accepted rule that such evidence is admissible if a proper foundation is laid.
*726 Terrell v. State (3 Md. App. 340) is a case which is strikingly similar to what the prosecution seeks to prove in the ease at bar. In the Terrell case, after a robbery, the police started the dog on a trail at the entrance to an alley. This point was chosen because a trail of dropped coins extended from the front of the motel where the robbery occurred to the alley. The dog led the officer up the alley, and turned right into another alley; from there the dog crossed the street to a church lawn and continued the trail south on the sidewalk to a Plymouth automobile containing three men, including the appellant.
On appeal, the court held (p. 358): “ In the case at bar, the qualifications and experience of the dog were shown. The scene was protected until the dog arrived. The dog was placed on the trail where it seemed apparent that the perpetrators of the crime had been. There was no interruption in the tracking. The dog went to the car where the appellant was hiding along with two men. The appellant was identified by the victim. All the dog did was locate three men and the appellant was identified as one of the perpetrators. The lower court did not err in admitting evidence of tracking.”
The motion to suppress any further testimony seeking to lay a foundation for the receipt of such evidence is denied. The examination may proceed.